### STATE *v.* OWEN.

1 CONTRACTS—OPTIONS—CONSIDERATION—TERMINATION.

A 90-day option to purchase land which recites a consideration but was not in fact obtained by the payment of consideration could be terminated by optionor at any time, hence it was immaterial that subsequent letter to optionee proposed terms that were vague and unenforceable although letter made it clear that optionor was no longer willing to let the option stand on its original terms.

2. SPECIFIC PERFORMANCE—OPTION TO SELL LAND—ACCEPTANCE.

Where optionee failed to accept continuing offer to sell land before its withdrawal by subsequent letter, optionee never became entitled to enforce conveyance.

Appeal from Ingham; Hayden (Charles H.), J. Submitted June 7, 1945. (Docket No. 39, Calendar No. 43,033.) Decided June 29, 1945.

Bill by State of Michigan against Catherine F. Owen to require specific performance of an option. Decree for defendant. Plaintiff appeals. Affirmed.

---

Termination of offer, see 1 Restatement, Contracts, § 35.
Option obtained for a consideration, see 1 Restatement, Contracts, § 47.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Elbern Parsons,* Assistant Attorney General, for plaintiff.

*McArthur & McArthur,* for defendant.

Reid, J. Plaintiff's bill of complaint asks for specific performance of an option to purchase real estate from the defendant. From a decree in favor of the defendant, the State appeals.

On or about February 4, 1943, the defendant signed an option for the sale by defendant to the State of real estate, which option was acknowledged before a notary on the day it bears date and is as follows:

"Option for Purchase of Land

"This contract, made this ... 4th ... day of ... February ... A. D. 19 .. 43 .., by and between ... Catherine F. Owen, R. No. 2, Mason, Mich. ... party ... of the first part, and ... State of Michigan ... party ... of the second part.

"Witnesseth, that the said party ... of the first part, in consideration of the sum of ... One and 00/100 ... dollars to ... her ... in hand paid by the said party ... of the second part, does ... hereby agree that ... she ... shall and will at any time within ... ninety days ... from the date hereof, at the written request of the said party ... of the second part, execute and deliver to ... it ..., or to any person or persons as ... it ... the said party ... of the second part shall direct in writing, a good and sufficient warranty deed of the following described land, situated in ... Ingham township ..., county of Ingham ... State of Michigan, to-wit: ... South one-half of northwest one-quarter (S ½ of NW ¼) section thirty-three (33), town two north, range one east (T2N, R1E) .... for the sum of ... Twelve Hundred ($1,200.00) ... dollars payable as follows:

"Cash upon completion of the following requirements and conditions:

"(1)  Approval of the proposal to purchase by Michigan conservation commission;

"(2)  Submission by the party of the first part of an abstract of title, tax history and warranty deed.  Party of the first part agrees to pay all taxes including those assessed at the time title is approved by the attorney general;

"(3)  Approval of title by the attorney general;

"(4)  Release of funds by the State administrative board.

"And the said party ... of the first part does ... hereby further agree that ... she ... shall and will not within ... ninety days ... from the date hereof, sell, convey, mortgage, or otherwise encumber the said land, or any part thereof, or do, or permit to be done, any act or deed to diminish or encumber the title to said land.

"It is agreed by and between the parties hereto, that if the said party ... of the second part at the expiration of the aforesaid limited time shall have declined or omitted to make application for the purchase of said land at the price aforesaid, then this instrument shall be void, and the above sum of ... One and 00/100 ... Dollars so paid as aforesaid ... shall be forfeited by the said party ... of the second part, and the said party ... of the first part shall have the right to retain the same, as and for liquidated damages, and the said party ... of the second part shall relinquish to said party ... of the first part all claim to the said land, either in law or equity, and, also all claim to the said sum of ... One and 00/100 ... Dollars, so paid as aforesaid, and no claim of the said party of the second part under this contract shall then be effectual.

"In witness whereof, the said part ... ha ... hereunto set ... hand and seal ... the day and year first above written.

"In presence of    Catherine F. Owen [Seal]
 Melvin L. Moone    .................[Seal]
 Aletha Dalman    .................[Seal]"

The defendant admits signing the option which was not, however, signed by the State. The sum of $1 mentioned in the option as a consideration thereof was not in fact paid to the defendant. The plaintiff, the State, admits that the writing is an option and not a land contract, except that the State claims that within the 90 days it accepted the continuing offer before its withdrawal and that therefore the defendant became bound to convey.

The plaintiff on February 11, 1943, wrote a letter to defendant requesting that an abstract which the State had borrowed from the National Farm Loan Association be brought down to date and that defendant furnish a full tax history and plaintiff further informed defendant that if the attorney general's opinion was favorable, the department would proceed to prepare a voucher and request preparation of a warrant in payment for the land, but if the title was not approved the papers would be returned to defendant. The State through its conservation department, which was the active agency in endeavoring to procure the title to these lands for the State, on April 2d wrote the defendant as follows:

April 2, 1943

"Mrs. Catherine Owen
 Route No. 2
 Mason, Michigan
"*Dear Mrs. Owen:*
    "Re: Dansville Project M 18 L—Pittman-
         Robertson Act—Tract No. 8 (part),
         S ½ NW ¼, Sec. 33, T 2 N, R 1 E
    "This is to advise you that we are in receipt of the abstract of title, abstract of taxes, tax receipt for 1935 and prior years, tax receipt for 1942. These title papers are being transmitted to the attorney general and if he finds your title marketable

we will prepare a warranty deed and send to you for execution. A voucher will also be prepared to cover the purchase price and the case will be completed as rapidly as possible.

> "Very truly,
> "F. P. STRUHSAKER,
>     Lands Division."

On April 5, 1943, defendant wrote plaintiff a letter as follows:

> > R 2, Box 71, Mason, Mich.
> >     April 5, 1943
> "Mr. F. P. Struhsaker
> Lands Division, Dept. of Conservation
> Lansing
> "Dear Sir:
> "When you prepare the warranty deed for me to sign covering the parcel, S ½ of NW ¼, Sec. 33, T 2 N, R 1 E, please state: subject to lease until Mar. 1, 1943, with the exceptions that none of the land is to be plowed up and hunting permitted during the pheasant season.
> "This is what Mr. Moone agreed to after consulting Mr. Black.
> "I also sent the tax history showing all taxes paid up to date which you overlooked in mentioning the paper sent.
> > "Yours very truly,
> > "Mrs. CATHERINE OWEN."

On or about April 9, 1943, the department of conservation wrote defendant a letter as follows:

> > April 9, 1943
> "Mrs. Catherine F. Owen
> R. F. D. No. 2
> Mason, Michigan
> "Dear Mrs. Owen:
> "Re: Dansville Area Tract No. 8—part
> "We have your letter of April 5th in which you suggest that the reservation to pasture your south

80 acres be placed in the deed when it is forwarded to you. It would not be feasible to encumber a deed with such a minor reservation as this and it would be preferable to cover the same by a written agreement with you.

"This letter will be your authority to use the land in question, described as the S ½ of NW ¼ of Sec. 33, T 2 N, R 1 E, for pasture purposes during the current 1943 season. The granting of this privilege is given with the understanding that no land will be plowed or timber cut on the tract during this time and that this department reserves the right to post the boundaries and reserve the hunting rights for the public during the open hunting season without responsibility of damage to any livestock on the tract during this time. It is believed that this agreement should be satisfactory to you as the purchase was agreed upon without any mention of such reservation to you.

"We are pleased to advise you that your title has been approved by the attorney general and we have now ordered a check drawn in payment of the purchase price.

"You will find enclosed a deed prepared for execution by you and kindly ask that you return same promptly. As soon as the case is closed, we will return the abstract of title to the National Farm Loan office as agreed.

"Very truly yours,
"F. P. Struhsaker,
Lands Division.
"M. L. Moone,
Land Acquisition."

The cash had not on April 9th been released by the State administrative board, which was one prerequisite to final acceptance of the offer.

It will further be observed that what this letter of April 9th proposed was not a compliance with what the defendant wrote on April 5th. She desired the

change in terms of the transaction to be evidenced in a warranty deed. The department proposed that such terms be omitted from the deed and that its letter would be her authority. Her request was that the deed recite: subject to lease until March 1, 1943. The department's letter of April 9th suggested reservation of the use of the land in question for pasture purposes during the current 1943 season. The apparent mistake in her letter reciting, "until March 1, 1943," seems to have been correctly understood by Mr. Struhsaker and Mr. Moone to mean March 1, 1944. It would seem that the requirement in her letter that it would be subject to lease until March 1st, with the year understood to be 1944, would give her tenant the right to take wood from the premises because he was renting some adjacent land and needed the wood, called buzz wood, for his use. The department's expressed belief that their proposal should be satisfactory to defendant was not concurred in by the defendant. The testimony is barren of any showing either by the letter of April 9, 1943, from the department to defendant or in any conversation or writing whatever that the parties after April 5, 1943, agreed upon any terms of sale.

Defendant's letter of April 5th was received by the department, the agency operating in the transaction on behalf of the State, before any date on which the plaintiff claims an acceptance by the plaintiff of the contract. Subsequent correspondence occurred and an interview was had by defendant with Mr. Moone at his office about April 16th. At that interview, the defendant verbally renewed her withdrawal of the option. Plaintiff claims that a letter was written to defendant on April 28, 1943, advising defendant that a check for $1,200 was on hand in the lands division office

for her and requesting execution and delivery of the deed. Defendant denies receiving this letter and the trial judge found that she did not receive it. A detailed discussion of the admissibility and effect of testimony about this letter is of no controlling importance in view of our decision on other grounds.

Plaintiff claims that the terms proposed by defendant in her letter of April 5th are vague and unenforceable. This argument is of no avail to plaintiff, inasmuch as the letter taken as a whole contains a clear import in writing that defendant was no longer willing to leave the option stand on its original terms. In order to terminate the option, defendant was not obliged to submit any other terms whatever.

Defendant's letter of April 5th amounted to a withdrawal and cancellation of the option in the terms as originally drafted. There was no subsequent agreement of the parties, either oral or written. The State not having accepted the continuing offer before its withdrawal by the letter of April 5th, the State never became entitled to enforce conveyance. *Bailey* v. *Grover*, 237 Mich. 548; *Olson* v. *Sash*, 217 Mich. 604.

The decree appealed from is affirmed. Costs to defendant.

STARR, C. J., and NORTH, WIEST, BUTZEL, BUSHNELL, SHARPE, and BOYLES, JJ., concurred.